# R E D A C T E D

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GE HARRIS RAILWAY ELECTRONICS, L.L.C., and GE-HARRIS RAILWAY ELECTRONICS SERVICES, L.L.C. | ) ) ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 99-070 GMS |
| | ) | |
| v. | ) | |
| | ) | |
| WESTINGHOUSE AIR BRAKE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### WABTEC'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF REASONABLE ATTORNEY'S FEES AND EXPENSES

Margaret M. Manning, Esq. (#4183)
BUCHANAN INGERSOLL PC
The Nemours Building
1007 N. Orange Street – Suite 1110
Wilmington, DE  19801
302.428.5500
302.428.3996 (fax)

OF COUNSEL:
George Patrick Baier, Esq. (Pa. I.D. #17233)
BUCHANAN INGERSOLL PC
One Oxford Centre – 20th Floor
Pittsburgh, PA  15219
412.562.8800
412.562.1041 (fax)

Daniel M. Darragh, Esq. (Pa. I.D. #34076)
COHEN & GRIGSBY, P.C.
11 Stanwix Street – 15th Floor
Pittsburgh, PA  15222
412.297.4900
412.209.1940 (fax)

Dated:  November 7, 2005

# R E D A C T E D

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .......................................................................................ii

Procedural Background........................................................................................ 1

Applicable Legal Standard ................................................................................... 2

   I.     GETS' FEE APPLICATION IS EXCESSIVE AND UNREASONABLE.......... 7

     A.  GETS' FEE APPLICATION INCLUDES WORK ON RELATED
        MATTERS................................................................................................ 12

     B.  GETS' FEE APPLICATION INCLUDES AN UNREASONABLE
        AMOUNT OF TIME FOR RESEARCH...................................................... 14

     C.  GETS' FEE APPLICATION INCLUDES TIME FOR
        DUPLICATIVE WORK ............................................................................ 14

     D.  GETS FEE APPLICATION INCLUDES CHARGES FOR
        OVERHEAD ITEMS ................................................................................ 16

     E.  GETS FEE APPLICATION INCLUDES INSUFFICIENTLY
        DOCUMENTED TIME AND DISBURSEMENTS ....................................... 16

   II.     GETS FEE APPLICATION SHOULD BE FURTHER REDUCED  TO
        EXCLUDE THE TIME AND EXPENSES INCURRED IN PURSUING
        PARTIALLY SUCCESSFUL OR UNSUCCESSFUL CLAIMS..................... 18

Conclusion.......................................................................................................... 21

Appendix 1 – Depositions
Appendix 2 – ██████████████████████████████
Appendix 3 – ████████████████████████████████████

Appendix 4 – ██████████████
Appendix 5 – ████████████████████
Appendix 6 – ████████████
Appendix 7 – ██████████
Appendix 8 – ████████
Appendix 9 – ██████████████

# R E D A C T E D

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Apple Corps Ltd. v. Int'l. Collectors Soc'y,* 25 F. Supp. 2d 480 (D.N.J. 1998) ........ passim

*Clarke v. Whitney,* 3 F. Supp. 2d 631 (E.D. Pa. 1998) ..................................... 3

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) ........................................... 2, 3, 16

*Institutionalized Juveniles v. Sec. of Pub. Welfare,* 758 F.2d 897 (3d Cir. 1985) ............. 3

*Int'l Rectifier Corp. v. Samsung Elecs. Corp.,* No. 04-1429, 04-1608, 2005 U.S. App. LEXIS 20401 (Fed. Cir. 2005) ............................................. 4

*LeMaster v. Bull,* 581 F. Supp. 1170 (E.D. Pa. 1984) ..................................... 4

*Lichtenstein v. Lichtenstein,* 425 F.2d 1111 (3d Cir. 1970) ......................... 4, 13

*Local No. 1 (ACA) Broadcast Employees of the Int'l Bhd. of Teamsters v. Int'l Bhd. of Teamsters,* 608 F. Supp. 548 (E.D. Pa. 1985) .................................... 4

*Microsoft Corp. v. United Computer Res. of N.J., Inc.,* 216 F. Supp. 2d. 383 (D.N.J. 2002) ................................................................ passim

*Orson, Inc. v. Miramax Film Corp.,* 14 F. Supp. 2d 721 (E.D. Pa. 1998) ........................ 3

*Pub. Interest Research Group of N.J., Inc. v. Windall,* 51 F.3d 1179 (3d. Cir. 1995) ................................................................ 3

*Rode v. Dellarciprete,* 892 F.2d 1177 (3d Cir. 1990) ......................................... 2

*Ursic v. Bethlehem Mines,* 719 F.2d 670 (3d Cir. 1983) ................................. 15

*W. Va. Univ. Hosps., Inc. v. Casey,* 898 F.2d 357 (3d Cir. 1990) ....................................... 2

*Washington v. Phila. Co. Court of Common Pleas,* 89 F.3d 1031 (3d Cir. 1996) .............. 3

# R E D A C T E D

## PROCEDURAL BACKGROUND

On September 1, 2004, following the Court's August 18, 2004 Decision and Order finding Westinghouse Air Brake Technologies Corporation ("Wabtec") in violation of paragraphs 2 and 4 of the December 1, 2000 Consent Order entered in this action, GE Transportation Systems-Global Signaling ("GETS") filed a motion seeking an award of legal fees totaling ██████████,[1] litigation expenses totaling ██████████, and expert witness fees totaling ██████████, in the aggregate ██████████. On September 15, 2004, Wabtec filed its Memorandum in Opposition, along with the September 10, 2004 affidavit of Daniel M. Darragh, and on September 22, 2004, GETS filed its Reply Memorandum, along with reply affidavits by Charles D. Ossola and Timothy R. DeWitt.

In its Memorandum, Wabtec argued, *inter alia*, that GETS had failed to properly document its requests because it had provided Wabtec with redacted copies of the fee invoices, thus precluding Wabtec from specifically objecting to the reasonableness of time spent on any particular tasks and leaving the Court with the burden of sifting through the unredacted invoices submitted *in camera*.

In its September 26, 2005 Order, the Court concluded that GETS' submission of redacted invoices had placed Wabtec at a distinct disadvantage; it ordered GETS to provide the unredacted invoices to Wabtec's attorneys; and it directed Wabtec to file a supplemental response to GETS' motion within ten (10) business days after receiving the

---

[1] The legal fees represented ██████ hours of attorney time and ██████ hours of legal assistant and support staff time provided by ██████ law firms.

# R E D A C T E D

unredacted invoices.  A complete copy of those invoices was received by Wabtec's

attorneys on September 30, 2005.

## APPLICABLE LEGAL STANDARD

The party seeking attorney's fees has the burden to prove that its request is

reasonable.  *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990).  The most useful

starting point for determining a reasonable attorney's fee is the number of hours

reasonably expended on the litigation multiplied by a reasonable hourly rate, *i.e.,* the

lodestar.  *Id.*, citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).  The court should

exclude from that calculation time that is not reasonably expended such as excessive,

redundant or otherwise unnecessary hours.  *Id.*  The court can reduce the hours and

expenses claimed by the number of hours that were spent litigating claims on which the

party did not succeed and which were distinct in all respects from claims on which the

party did succeed.  *Id.*  The court can also deduct hours where the fee petition

inadequately documents the hours claimed.  *Id.  See also*, *W. Va. Univ. Hosps., Inc. v.

Casey,* 898 F.2d 357, 367 (3d Cir. 1990) (noting that the court expects to be provided

with sufficient supporting data to intelligently make an award; the burden is on the fee

applicant to produce satisfactory evidence).

After determining the lodestar, the district court has the discretion to make a

further downward adjustment if the lodestar is not reasonable in light of the results

obtained.  "This general reduction accounts for time spent litigating wholly or partially

unsuccessful claims that are related to the litigation of the successful claims."  *Rode,*

892 F.2d at 1183, citing *Hensley,* 461 U.S. at 436.  See also, *Institutionalized Juveniles v.*

# R E D A C T E D

*Sec. of Pub. Welfare,* 758 F.2d 897, 918-19 (3d Cir. 1985); *Orson, Inc. v. Miramax Film Corp.,* 14 F. Supp. 2d 721, 726-27 (E.D. Pa. 1998); *Clarke v. Whitney,* 3 F. Supp. 2d 631, 636 (E.D. Pa. 1998).

While the district court may not reduce the attorney's fees to maintain some ratio between the fees and the damages awarded, the amount of compensatory damages awarded is relevant in the calculation of reasonable attorney's fees because of the settled principle that attorney's fees should only be awarded to the extent that the litigant was successful. *Washington v. Phila. Co. Court of Common Pleas,* 89 F.3d 1031, 1041-42 (3d Cir. 1996). The amount of damages awarded, when compared to the amount of damages requested, may be one measure of how successful the plaintiff was, and, therefore, may be taken into account when awarding reasonable attorney's fees. *Id.* at 1042. Where a plaintiff has achieved only partial success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount, and the district court has the discretion to exclude some or all of the time spent on unsuccessful claims. *Pub. Interest Research Group of N.J., Inc. v. Windall,* 51 F.3d 1179, 1189-90 (3d. Cir. 1995) (citing *Hensley,* 461 U.S. at 436).

In a contempt proceeding, the prevailing party may only recoup attorney's fees and costs incurred in prosecuting the motion for contempt. *Microsoft Corp. v. United Computer Res. of N.J., Inc.*, 216 F. Supp. 2d. 383, 388 n.3 (D.N.J. 2002), citing

# R E D A C T E D

*Lichtenstein v. Lichtenstein*, 425 F.2d 1111, 1113-14 (3d Cir. 1970), and *Apple Corps*

*Ltd. v. Int'l. Collectors Soc'y,* 25 F. Supp. 2d 480, 484 (D.N.J. 1998).[2]

While such fee requests are evaluated using the lodestar method, the amount may

be adjusted downward if it is not reasonable in light of the result obtained.[3] *Microsoft,*

216 F. Supp. 2d at 387 (citing *Hensley* and *Rode*).  Such a reduction accounts for time

spent litigating wholly or partially unsuccessful claims that are related to the litigation of

successful claims.  *Apple Corps Ltd.*, 25 F. Supp. 2d at 485 (citing *Rode*).

The party seeking the award of fees has the burden of establishing the fees sought

by submitting evidence to support the reasonableness of the hours and rates claimed.  The

adverse party may challenge the reasonableness of the hours expended or the hourly rate,

and where that challenge has merit, the court has wide discretion to adjust the amount of

fees to be awarded to reflect inadequate documentation, duplication of effort,

unreasonableness of hours expended, or lack of relation to the results obtained.

*Microsoft,* 216 F. Supp. 2d at 387.

The defendant in *Microsoft* argued, *inter alia,* that the fee request should be

reduced because:  (1) it included fees for work on a related matter; (2) Microsoft's two

law firms performed duplicative work; and (3) the hours were unreasonable given the

---

[2] *See Local No. 1 (ACA) Broadcast Employees of the Int'l Bhd. of Teamsters v. Int'l Bhd. of Teamsters,*
608 F. Supp. 548, 551 (E.D. Pa. 1985) (attorney's fees for prosecuting a contempt motion should be awarded only to
the extent that the party succeeded in holding the other party in contempt).  *See also, LeMaster v. Bull,*
581 F. Supp. 1170, 1174-75 (E.D. Pa. 1984) (holding that plaintiff should not be compensated for efforts that did not
result in a finding of contempt and reducing lodestar by 35%).  *See also Int'l Rectifier Corp. v. Samsung Elecs.
Corp.,* No. 04-1429, 04-1608, 2005 U.S. App. LEXIS 20401, at *9 (Fed. Cir. 2005) (applying the *Hensley* principles
to a request for attorney's fees related to a contempt motion).

# R E D A C T E D

issues involved and that it was Microsoft's own aggressive litigation strategy that increased its costs. *Id.* at 388. The court held that a reduction for duplicative work is warranted if the attorneys are unreasonably doing the same work. While the court found that a certain amount of communication between counsel is essential, the hours expended by senior partners and associates at both firms was duplicative, and the court reduced the amount claimed by each firm by a half. *Id.* at 389-90. In addition, the firms withdrew from the application all of the time that each had spent on a related matter. *Id.* at 388, n.3.

One of Microsoft's firms had divided its hours into eight categories of work, and as to each category, the court evaluated whether the hours charged by three partners, five associates and five paralegals were unreasonable and/or duplicative. As a result, the court awarded Microsoft $142,000 out of the $252,000 fee request. *Id.* at 390-96.[4]

Similarly, in *Apple Corps Ltd.,* the court noted that the lodestar calculation requires that the court "carefully and critically evaluate the hours and the hourly rate set forth by counsel." 25 F. Supp. 2d at 485. While the burden may shift to the party opposing the fee to contest the reasonableness of the hourly rate or the hours expended, such a defendant's objections are adequate if they allege that the hours spent on particular

---

Footnote continued from previous page

[3] Factors such as novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation and the result obtained are already reflected in the lodestar method. *Microsoft,* 216 F. Supp. 2d at 387.

[4] GETS' fee petition does not provide the same level of breakdown by categories. The unredacted invoices are lacking sufficient detail to enable an outsider to fairly determine how many lawyers worked on each particular task and how many hours were expended. Thus, GETS' petition is more difficult to evaluate.

# R E D A C T E D

categories of work are excessive; it is not necessary to identify each individual time entry believed to be unreasonable. *Id.,* n.4.

In *Apple Corps Ltd.*, the defendant successfully objected to hours included in the fee petition that were not directly related to the contempt motion, and the defendants argued that the time entries were not sufficiently specific to enable the court to discern what hours were spent on the contempt motion as opposed to the related matters. While the court noted that plaintiffs' attorneys were not required to do their time records by separate tasks related to the contempt motion, it disallowed time entries that listed multiple tasks or lacked the specificity necessary for the court to determine that the time was spent on the contempt motion. *Id.* at 487. In assessing whether some of the hours requested were unnecessary or duplicative, the court disallowed time spent cite-checking the defendant's proposed findings and conclusions; time spent by attorneys who attended the hearing but did not directly participate; excessive time spent on legal research, drafting and revising pleadings and briefs, particularly where senior attorney rates were charged for routine work;[5] and part of the time spent by a senior partner in preparing for the hearing.[6]

With regard to litigation expenses, the fee applicant has the burden of adequately documenting and itemizing the costs, and such costs must also be reasonable. *Id.* at 497.

---

[5] The court acknowledged that private clients and law firms can choose to staff and manage their engagements as they might desire, but doing so does not entitle them to recover all such fees from the defendant. *Id.* at 490-91.

[6] Where the senior partner's preparation time was three times the amount spent at the hearing, the court noted that the senior partner cannot demand a high hourly rate and run up an inordinate amount of time preparing for a case in his area of alleged expertise. *Id.* at 491.

# R E D A C T E D

Since the fee applicant failed to itemize its computerized legal research charges, the court was unable to determine what percentage of such costs were incurred for the contempt motion as opposed to related work.  The court, therefore, reduced the amount of the costs allowed.  *Id.* at 498.  Similarly, the court reduced the claim for photocopy expenses, express delivery charges, and fax and telephone charges for lack of information concerning a description of what was copied, how many pages were copied, the justification for copying and/or the justification for/relationship of express mail and fax and phone charges to the contempt motion.  *Id.* at 498-500.  The court disallowed entirely the claims for meal expenses.  *Id.* at 499.  Recovery for non-legal staff costs requires a showing for extraordinary need for such services.  *Id.* at 500.  As a result, where plaintiff sought to recover $308,423 in fees and expenses for the investigation, preparation for, and conduct of a four day contempt hearing, the court awarded a total of $109,444 for fees and expenses.

## I.

### <u>GETS' FEE APPLICATION IS EXCESSIVE AND UNREASONABLE</u>

Wabtec submits that the more than ███ total hours for lawyers, paralegals and support staff charged for the prosecution of the contempt motion by GETS' legal team, consisting of Arnold & Porter ("A&P"), Mr. DeWitt and his associates, and Richards, Layton & Finger ("RL&F"),[7] are excessive and unreasonable because the issues involved in the motion were not unusually complicated; A&P and DeWitt already had a very

# R E D A C T E D

substantial working knowledge and understanding of the underlying patents and technologies as a result of the recently concluded patent infringement litigation; as demonstrated by their affidavits, as well as their performance in prosecuting the motion, Mr. Ossola is a very experienced and highly skilled intellectual property litigator, and Mr. DeWitt, an electrical engineer and member of the Patent Bar, based on his more than ███ hours of work on the technical issues in the underlying patent litigation, was as technically proficient in the art in question as he was skilled in the courtroom; and the fee application includes work on matters not necessary for prosecution of the motion, for excessive and redundant research and drafting/reviewing of court filings, for work normally covered by overhead, and contains insufficiently documented time and disbursements.[8]

The license that was part of the settlement of the underlying patent litigation granted Wabtec the right to practice the inventions disclosed in GETS' patents with two limitations: (1) radio frequency communications performing the functions of link and link reply messages, as described in the '280 patent and its specification, could not contain two identifiers; and (2) the brake pipe continuity test could not be performed using a differential pressure transducer. Paragraph 2 of the December 2000 Consent Order required Wabtec to adhere to the terms of the license. In addition, paragraph 4 of

---

**Footnote continued from previous page**

[7] ███████████████████████████████████████████████████████████
███████████████████████████████████

[8] Wabtec's objections to GETS' attorney's fee request is not intended as a criticism of the attorneys/firms who represented GETS. Rather, it is an objection to GETS' request that Wabtec be required to pay for GETS' overly

**Footnote continued on next page**

# R E D A C T E D

the Consent Order precluded Wabtec employees Kull and Klemanski from being involved in RF PowerLink work until September 2003.

In its August 18, 2004 Memo Opin., at 8, the Court defined the contempt issues related to paragraph 2 of the Consent Order as:  (1) whether the PowerLink FreightCorp 90 ("FC90") distributed power ("DP") system violated either of the two technical limitations in the license, and (2) whether Wabtec's proposal to QR was an offer to sell the FC90 system.  There was no dispute that the QR proposal constituted an offer to sell, but there was a dispute regarding the technology included in that proposal. *Id.* at 9.  The Court also noted that there was no dispute that Kull was involved in the offer to sell an RF DP product to QR.  *Id.* at 11.

After learning of Wabtec's proposal to QR, in May 2002, GETS retained the services of a well recognized communications expert, Jackson, as well as one of the inventors on the '280 and '723 patents, Nichols, to review Wabtec's technical documents to determine whether the revisions to PowerLink that became known as the FC90 system were consistent with the restrictions in the license.  Between May 2002 and August 2002, Wabtec fully cooperated with GETS' requests for documents, including source code, related to the FC90 DP system, and Wabtec approved GETS' requests to have those documents reviewed by its experts.[9]

---

**Footnote continued from previous page**

aggressive, take no prisoners, spare no expense litigation tactics.  Those tactics are clearly reflected in the firms' billing records, including the number of attorneys and paralegals employed to do the work.

[9]  To accommodate Jackson's request, Wabtec supplied the source code in both paper and electronic formats.

# R E D A C T E D

Not including the time spent by its expert,[10] the GETS' legal team charged █████

hours in lawyer and paralegal time between May and November 2002 to investigate the

FC90 system, prepare the motion for contempt and a 25 page support brief, review

Wabtec's response, and prepare a 19 page reply brief.[11]

In late-December 2002, the Court granted GETS' request for 90 days of discovery.

Between January and early-May 2003, the parties engaged in limited written discovery,[12]

Wabtec produced approximately 6,000 pages of documents related to the development of

the FC90 system and its proposal to and contract with QR,[13] and 16 witnesses were

deposed.[14] The 16 depositions consumed a total of approximately 57 hours (*i.e.,* about

3.5 hours for each), and the transcripts total approximately 1,715 pages. GETS' legal

team charged ███████ hours of lawyer and paralegal time to conduct that discovery.

The Court conducted an evidentiary hearing on May 13-14, 2003, consisting of

approximately 14 hours. GETS presented one fact witness and three experts on May 13,

---

[10] From July through November 2002, Jackson charged ███████████████████████████████████████.

[11] Mr. Ossola's September 22, 2004 reply affidavit allocates the A&P time into four categories, and those categories are discussed herein. Since no similar breakdowns were provided by DeWitt or RL&F, Wabtec added to the separate totals provided by Mr. Ossola hours identified by a review of the DeWitt and RL&F billing records for the same time periods.

[12] GETS' written discovery consisted of the following: (1) a request for 17 categories of documents; (2) a response to Wabtec's 8 interrogatories and request for 3 categories of documents; (3) GETS' 12 interrogatories to Wabtec and 22 additional (significantly redundant) document requests; (4) GETS' response to 1 additional interrogatory and 1 additional document request; and (5) GETS' response to 30 requests to admit.

[13] QR accepted Wabtec's proposal in late-June 2002, and QR and Wabtec entered into a contract in late-July 2002. Many pages of the documents produced were not relevant to the issues in dispute. For example, Wabtec's response to the QR tender consisted of 3 volumes (over 1,200 pages), but only a few pages thereof related to the issues in dispute.

[14] GETS took the depositions of nine Wabtec employees and three experts (two technical experts and an attorney who had provided a legal opinion to Wabtec). Wabtec deposed two GETS' employees and two of GETS three

**Footnote continued on next page**

# R E D A C T E D

and Wabtec presented two facts witnesses and two experts on May 14. Also, in early-May, GETS filed a motion for sanctions related to Kull's destruction of e-mail records. After the hearing the GETS legal team began work on its post-hearing submissions. The GETS legal team charged ███ hours of lawyer and paralegal time to prepare for and conduct the two day evidentiary hearing and related work and to prepare the motion for sanctions.[15]

Between June and August 2003, the parties prepared and filed deposition designations and counter-designations, a stipulation of undisputed facts, proposed findings of fact and conclusions of law and reply briefs. In July 2003, Wabtec requested permission to supplement the record with newly discovered evidence, and GETS stipulated to allow the same. On March 29, 2004, the Court issued its Decision and Order on GETS' motion for sanctions. The GETS' legal team charged ███ hours of lawyer and paralegal time for such work between June 2003 and March 2004.

Wabtec submits that those facts alone demonstrate that the total number of hours contained in the petition are excessive and unreasonable.[16] Wabtec's review of the unredacted invoices has identified the following additional bases for concluding that the total hours contained in the petition are excessive and unreasonable.

---

Footnote continued from previous page
designated experts. Appendix 1 attached hereto provides pertinent information related to the length of those depositions.
[15] For purposes of the hearing, GETS was also charged ███████ for Carter, its damage expert; ███████ for Jackson; ███████ for Nichols; ███████ for two days of computer support for the hearing; and ███████ for ███ hours of A&P secretarial support.
[16] Wabtec has not challenged the reasonableness of the hourly rates set forth in the petition.

# R E D A C T E D

## A.    GETS' FEE APPLICATION INCLUDES WORK ON RELATED MATTERS

Between May and August 2002, the GETS' legal team spent a substantial amount of time working on matters that were not required for nor directly related to the prosecution of the contempt motion.  Appendix 2 attached hereto is a summary of the time entries which Wabtec has been able to identify as involving work on matters other than the prosecution of the contempt motion.[17]

The GETS law firms expended approximately ███ partner hours, ███ of counsel hours, ███ associate hours, and ███ paralegal hours and GETS was charged approximately

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

While some of the time entries are quite cryptic, it appears ██████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[17] In a number of instances, the GETS law firms' time entries identified multiple tasks on a given date without an allocation of the time spent on any particular task.  In those instances, the complete entry and the total time are listed in the Appendix.

# R E D A C T E D

███████████████████████████████████████████████████████

████████████████████

While such work was, no doubt, requested by GETS, the Court's inherent power to award attorney's fees in a matter such as this is limited to reasonable attorney's fees incurred in prosecuting the motion for contempt; it does not include fees and expenses for such independent but related matters. "In a contempt proceeding, the court may, in its discretion, award expenses, costs and fees to the petitioner. These items are restricted to reasonable amounts incurred in prosecuting the petition." *Lichtenstein,* 425 F.2d at 1113-14. See also, *Microsoft, supra;* and *Apple Corps Ltd., supra.*

In April 2003, Wabtec filed a new action in this Court against GETS, No. 03-439 GMS, seeking a declaratory judgment and other relief. The GETS' fee request includes time entries in June and July 2003 to prepare and file an answer related to that separate action.

The GETS' fee request also includes time entries between June 2003 and March 2004 related to ████████████████████████. Wabtec submits that GETS is not entitled to recover any of its fees and expenses for work on these matters which were not necessary for or directly involved in the prosecution of the contempt motion.[18] Wabtec submits that GETS' request for fees should be reduced at least by the sum of ██████████.

---

[18] While GETS' law firms charged for computerized legal research and other expenses, there is insufficient detail in the disbursement billing records to determine the precise amounts that relate to the research and other expenses such as photocopying, fax and telephone charges, but clearly such expenses were incurred in regard to this other work and some reduction in the amount of expenses requested is necessary. GETS should be directed to delete all expenses related to these other activities.

# R E D A C T E D

**B.    GETS' FEE APPLICATION INCLUDES AN UNREASONABLE AMOUNT OF TIME FOR RESEARCH**

GETS was charged ▮▮ partner hours and ▮▮ associate hours for ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ associate hours ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ associate hours ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and ▮ associate hours ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. See Appendix 3 attached hereto. GETS' fee application makes no attempt to explain why almost ▮▮ hours of legal research, at a cost of approximately ▮▮▮▮, was reasonable and necessary to the prosecution of its contempt motion, a motion that did not involve any particularly unique or novel legal issues.[19] Wabtec submits these hours are excessive and unreasonable and should be reduced substantially.[20] A similar reduction should apply to related disbursement charges.

**C.    GETS' FEE APPLICATION INCLUDES TIME FOR DUPLICATIVE WORK**

As shown by Appendix 4 attached hereto, research on the same issues and preparation of court filings was conducted by more than one timekeeper. For example,

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[19] Wabtec was not able to clearly distinguish between research hours related to ▮▮▮▮▮▮▮▮▮ discussed in Paragraph A, *supra*, and the hours identified on Appendix 3 attached hereto. Thus, there could be some duplication.

[20] By proceeding with its very generalized argument that this was an allegedly complex case justifying the hours charged, GETS' lawyers have avoided any true justification for ▮▮ hours of research. If GETS attempts such a justification in its reply hereto, Wabtec will be denied a fair opportunity to confront any such assertions.

# R E D A C T E D

██████████████████████████████████████████████████████████████████

████████████████████████████████.[21]  A number of lawyers and paralegals

on the GETS legal team attended but did not participate in the May 13-14 hearing.[22]

These duplicative efforts involve time charges totaling ████████.  Wabtec submits that

these hours should be reduced significantly.

In addition, GETS was charged for ████ partner hours, ████ of counsel hours,

████ associate hours and ████ legal assistant hours totaling ████████ for ████████

██████████████████████████████.  See Appendix 5 attached

hereto.  These time entries reflect an unnecessary and unreasonable duplication of effort.

Again, GETS' fee application makes no attempt to explain why a number of different

partners, associates and legal assistants needed to █████████████████████████

███████████████████.  Given the hourly rates charged by all of the timekeepers

on GETS' legal team, such redundant efforts cannot be justified as reasonable.  Wabtec

submits that such charges should be reduced significantly.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

---

[21]  As noted in *Microsoft*, 216 F. Supp.2d at 392, the wasteful use of highly skilled and highly priced talent for matters easily delegable to less experienced associates should not be tolerated.  Citing *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983).
[22]  The GETS legal team charged ██████████████████████████████████████ ██████████████ hours in total, for the 2 days of the hearing.

# R E D A C T E D

███████████████████████████ See Appendix 6 attached hereto.  At the same

time, GETS' expert, Jackson, spent ████████████████████████. The

duplicative lawyer time charges should be reduced substantially.

## D.    GETS FEE APPLICATION INCLUDES CHARGES FOR OVERHEAD ITEMS

As shown by Appendix 7 attached hereto, A&P charged GETS for having legal

assistants do work that traditionally has been done by support staff covered by the Firm's

overhead.  For example, on June 17, 2002, ████████████████████████

████████████████████████ No special skill or training is required for

such ████ services.  These charges total ████████. In today's world, most corporate

clients would not tolerate being charged for such tasks in addition to the substantial

hourly rates charged by counsel.  Wabtec submits that none of those charges should be

allowed.

## E.    GETS FEE APPLICATION INCLUDES INSUFFICIENTLY DOCUMENTED TIME AND DISBURSEMENTS

The party seeking an award of attorney's fees has the burden of establishing the

reasonableness of the fees sought and submitting evidence to support the hours claimed.

*Microsoft,* 216 F. Supp. 2d at 387, citing *Hensley,* 461 U.S. at 433.  That burden is not

met when the fee request is not adequately documented.  Attached hereto as Appendix 8

is a list of the time charges totaling ████████ that are inadequately documented in

order to determine whether and/or how much of the entry relates to work on matters not

required for the prosecution of the contempt motion, on excessive research or on

duplicative work.  Because multiple tasks are listed for a number of entries, some of

# R E D A C T E D

which include compensable work, it is not possible to precisely determine the number of

hours that should be attributed to excludable work.  Wabtec submits that the total hours

listed on Appendix 8 should be reduced significantly.

Attached hereto as Appendix 9 is a list of the questionable/unexplained

disbursements included on the A&P invoices.  These disbursements ███████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ In

May 2003, A&P charged GETS for ████ hours of secretarial time.  Wabtec submits that

the amount of allowable disbursements, before any downward adjustments for the

reasons noted *supra*, should be reduced by █████████.

For all of the foregoing reasons, and because it is impossible to make a more

precise determination given the inadequacy of detail in a number of the time charges and

GETS' failure to demonstrate that the total hours charged were reasonable and

necessary,[23] Wabtec submits that the amount requested should be reduced by 50% with

the lodestar calculated at ████████ and a similar reduction should be applied to the

disbursements for an allowance of ██████.

---

[23] In *Microsoft*, 216 F. Supp. 2d at 391, the court noted that Microsoft's lead law firm had "expended an incredible 1066.6 hours of attorney time and 73.6 hours of paralegal time investigating and prosecuting a civil contempt matter against an adversary with whom it was already familiar…To say that this represents 'overkill' is an understatement." Here, GETS' legal team expended ██████ hours of attorney time and ██████ hours of paralegal and staff time to investigate and prosecute a contempt motion related to a very recently completed patent litigation.

# R E D A C T E D

## II.

### GETS FEE APPLICATION SHOULD BE FURTHER REDUCED TO EXCLUDE THE TIME AND EXPENSES INCURRED IN PURSUING PARTIALLY SUCCESSFUL OR UNSUCCESSFUL CLAIMS

The Court's August 18, 2004 Memo Opin. did not accept a number of GETS' claims. While the Court did find that Wabtec's FC90 link message protocol violated paragraph 2 of the Consent Order and that Kull's conduct violated paragraph 4 of the Consent Order, it rejected GETS' claim that Wabtec's use of a differential pressure transducer violated the Consent Order;[24] it rejected GETS' claim that it was entitled to ███████ in lost profits[25] because, under any evidentiary standard, GETS failed to show that it would have been awarded the QR contract "but for" Wabtec's conduct;[26] it rejected GETS' alternate claim that it was entitled to a ███ royalty rate; it rejected GETS' claim that Wabtec employee Klemanski violated paragraph 4 of the Consent Order; and it independently determined how to measure the damages that it determined GETS had suffered as a result of Wabtec's conduct.[27]  The damages awarded represent

---

[24] Mr. DeWitt was responsible for investigating and presenting the technical issues.  He conducted 10 of the 12 deposition taken by GETS, defended 3 of the 4 depositions taken by Wabtec, and, at the contempt hearing, he presented GETS' 2 technical experts and cross-examined Wabtec's 2 technical witnesses.

[25] Mr. Ossola presented GETS' damage evidence, and he cross-examined Wabtec's damage witnesses.  Mr. Ossola also lead GETS' efforts on the motion for contempt related to paragraph 4 of the Consent Order and the motion for sanctions related to Kull's conduct.  While those efforts related to Kull's conduct were nominally successful, the sanction was limited to an adverse inference (not the default judgment requested), and no separate damages were awarded based upon Kull's conduct.

[26] The Court made that determination even without considering Wabtec's request to supplement the record (determining that said request was moot).  The Court found that a competitively priced wireline distributed power system was an attractive, non-breaching alternative that QR could have accepted.  Memo Opin. at 21, 23-24.

[27] The Court applied an adverse inference to conclude that Kull's activity enabled Wabtec to make an RF DP offer to QR and that otherwise Wabtec's offer would have been limited to a wireline DP system at a lower profit.  The Court, however, limited its damage award to its estimation of a negotiated royalty for a license to sell the FC90 system.  No separate or additional damages were awarded based on Kull's conduct.  Memo Opin. at 24-25.

# R E D A C T E D

between 15% and 35% of the amount requested by GETS, depending on the total number of units purchased by QR under the contract option.

████████████████████████████████████ hours and ████████ expenses were charged in pursuit of GETS' goal of recovering its expected profit on the QR bid, measured as if it was the only bidder and was awarded the contract. The entire thrust of the Kiss and Carter testimony, and the substantial part of Mr. Ossola's efforts throughout the period covered by the fee request were focused on GETS' claim that it should be entitled to recover its expected profit on the QR bid in the sum of at least ████████. Kiss and Carter asserted and Mr. Ossola vigorously argued that QR was insisting on a proposal that was predicated on using RF DP, regardless of the price, and that "but for" Wabtec's conduct, GETS would have been awarded the QR contract. Applying either the fair preponderance or clear and convincing evidentiary standards, the Court expressly rejected those claims.[28] Memo Opin. at 21. In addition, the Court did not even discuss Carter's alternative proposed ████ royalty rate. The Court arrived at the measure of damages essentially on its own. *Id.* at 23-25.

By virtue of its overly aggressive litigation tactics, GETS elected to pursue a damage theory that was not supported by the facts known to it from the very beginning. In pursuing those unsuccessful efforts, it chose to incur very substantial legal fees and

---

[28] Wabtec's proposal to QR included a wireline DP system combined with a wireline ECP system (for electronic control of air brakes through the entire train), with a backup RF DP system. *Id.* at 23. There were no restrictions on Wabtec's sale of wireline DP systems. The hearing evidence demonstrated that GETS, at the request of QR, on June 6, 2002, supplemented its proposal to specify its wireline DP and ECP capability. (Pltf. Direct Ex. 4, including attachment to). In fact, in its contract with Wabtec, QR elected to have its locomotives equipped with wireline DP and ECP functionality. Memo Opin. at 23.

# R E D A C T E D

expenses, as well as all of the fees charged by its damage expert, Carter, *i.e.,* ▮▮▮▮▮

In addition, GETS unsuccessfully asserted that Wabtec's FC90 RF DP system violated

the brake pipe continuity test provisions in the Settlement Agreement and Consent Order.

Mr. DeWitt was primarily responsible for investigating and presenting that claim, and

GETS paid Mr. Nichols ▮▮▮▮▮ for his services to support that claim.  GETS asserted

that Klemanski had violated paragraph 4 of the Consent Order.  That claim failed.

This Court has the discretion to adjust the loadstar amount downward if that

amount is not reasonable in light of the result obtained and such a reduction may account

for time spent litigating wholly or partially unsuccessful claims that are related to the

litigation of successful claims.  *Microsoft,* 216 F. Supp. 2d at 387; *Apple Corps. Ltd.*,

25 F. Supp. 2d at 45.  Before applying any such reduction, the lodestar amount must first

be determined.  The issues raised in point I *supra* must be resolved in arriving at the

lodestar.

Considering GETS' partial success on the motion for contempt, including the

recovery of only 15% to 35% of the requested damages, Wabtec respectfully submits that

the lodestar for GETS' attorney's fees and disbursements[29] should be further reduced by

30%, the Carter and Nichols expert witness fees should be disallowed, and the Litigation

Communications, Inc. fees should be reduced by 50%.  In that event, GETS would be

entitled to an award of fees, costs and disbursements in the sum of ▮▮▮▮▮ .

---

[29] Since none of the invoices detail or itemize the disbursement charges as being related to a particular task, it would be appropriate to reduce the disbursements by the same percentage applied to the fees.

# R E D A C T E D

## <u>CONCLUSION</u>

WHEREFORE, Wabtec respectfully urges the Court to award no more than

█████████ on GETS' request for attorney's fees, costs and disbursements.


Respectfully submitted,

BUCHANAN INGERSOLL PC


By:____/s/ Margaret M. Manning_____
    Margaret M. Manning, Esq. (#4183)

The Nemours Building
1007 N. Orange Street – Suite 1110
Wilmington, DE  19801
302.428.5500
302.428.3996 (fax)

<u>OF COUNSEL</u>:
George Patrick Baier, Esq. (Pa. I.D. #17233)
BUCHANAN INGERSOLL PC
One Oxford Centre – 20th Floor
Pittsburgh, PA  15219
412.562.8800
412.562.1041 (fax)

Daniel M. Darragh, Esq. (Pa. I.D. #34076)
COHEN & GRIGSBY, P.C.
11 Stanwix Street – 15th Floor
Pittsburgh, PA  15222
412.297.4900
412.209.1940 (fax)

Dated:  November 7, 2005

# R E D A C T E D

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of November, 2005, the foregoing document

was served on counsel of record at the following addresses as indicated:

Charles D. Ossola, Esq.
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC  20004-1202
***Via First-Class Mail, Postage Prepaid***

Timothy R. DeWitt, Esq.
24IP Law Group USA, PLLC
600 Cameron Street
Alexandria, VA  22314
***Via First-Class Mail, Postage Prepaid***

Frederick L. Cottrell, III, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
P.O. Box 551
Wilmington, DE  19899-0551
***Via Hand Delivery***

   /s/ Margaret M. Manning   
Margaret M. Manning